**In the Matter of TRANS WORLD AIRLINES, INC., Debtor.**

**Bankruptcy No. 92–115.**

United States Bankruptcy Court, D. Delaware.

Oct. 3, 1994.

William H. Sudell, Jr., Andrea L. Rocanelli, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, David S. Kurtz, Timothy R. Pohl, Jones, Day, Reavis & Pogue, Chicago, IL, for debtor.

Ann G. Spadafora, Becket, MA, pro se.

Alane Probst, Trans World Airlines, Inc., St. Louis, MO.

### MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Chief Judge.

This is the court's decision on Trans World Airlines, Inc.'s (TWA) motion for summary judgment with respect to claim number 6791 filed by Ann G. Spadafora.

### I. JURISDICTION

Original jurisdiction for this matter lies in the United States District Court for the District of Delaware. 28 U.S.C. § 1334. The District Court has referred that jurisdiction to this court. 28 U.S.C. § 157; *In re Referral Of Title 11 Proceedings To The United States Bankruptcy Court For This District, As That Court Is Defined in 28 U.S.C. § 151,* (D.Del. June 13, 1994) (order). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### II. LEGAL STANDARD FOR SUMMARY JUDGMENT

TWA objected to Spadafora's claim, and therefore this is a contested matter governed by Federal Rule of Bankruptcy Procedure 9014. Fed.R.Bankr.P. 3007, Advisory Committee Notes (1983). That rule incorporates Federal Rule of Bankruptcy Procedure 7056

and therefore Federal Rule of Civil Procedure 56, the basis for TWA's present motion.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In its determination of this motion, the court will view the record and the inferences therefrom in the light most favorable to Spadafora. *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 512 (3d Cir.1987). An adverse party to a properly filed and supported motion for summary judgment must set forth, by affidavits or as otherwise provided in Rule 56, facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Where no genuine issue of material fact exists, the moving party must be entitled to judgment as a matter of law before judgment will be entered in its favor.

## III. FACTS

The following undisputed facts are adequate to discuss the legal issues involved.

Spadafora was injured in February of 1985 while working as a flight attendant in international operations for TWA. Thereafter, she did not return to her position. As a consequence of her injury, Spadafora received contractual disability benefits from TWA pursuant to a collective bargaining agreement. Specifically, the collective bargaining agreement provided that "[TWA] will provide benefits for Flight Attendants in International Operations in accordance with either the Workers' Compensation laws of the State of New York or of the Federal Longshoremen's and Harbor Worker's Act, whichever act provides the higher benefits." Article 20(D)(2) of the Collective Bargaining Agreement dated April 12, 1983. The Federal Longshoremen's Rate was higher, thus Spadafora's total contractual benefits have been paid at that rate. Despite the fact that Spadafora has been paid at the higher rate, her claim seeks payment of *both* benefits over a period of forty years, amounting to $902,400.00. Spadafora Proof of Claim no. 6791.

In September of 1992, a new collective bargaining agreement deleted Article 20(D)(2), but "grandfathered in" Spadafora's benefits at the higher Longshoremen's Rate. Spadafora's union, the Independent Federation of Flight Attendants (the IFFA), represented Spadafora and other members of the IFFA in negotiations for the new collective bargaining agreement.[1] The new agreement provided:

> Longshoremen's Benefits. Article 20(D)(2) shall be deleted.... Notwithstanding the foregoing, the parties agree that a Flight Attendant who has sustained an industrial injury/illness in International Operations and filed a claim with the Company prior to the effective date of the new Agreement, shall be provided the higher of state Worker's Compensation benefits or the benefits under the Federal Longshoremen's and Harbor Worker's Act during the period such Flight Attendant is receiving weekly compensation based on a *temporary* disability.

> Notwithstanding that under former Article 20(D)(2) the Federal Longshoremen's and Harbor Worker's Act were not applicable to any permanent disability situation, the Company agrees that it will not challenge nor attempt to reduce any *permanent* disability benefits, mistakenly awarded prior to the effective date of the new Agreement and computed using the Federal Longshoremen's and Harbor Worker's Act, on the grounds that the Federal Longshoremen's and Harbor Worker's Act benefit was not applicable in cases of *permanent* disability under former Article 20(D)(2).

Article VII, ¶ F of the Agreement between TWA and the IFFA dated August 13, 1992 (emphasis in original). Pursuant to the new agreement, Spadafora continues to receive benefits at the higher Longshoremen's Rate to this day.

Subsequently, the IFFA brought a class grievance on behalf of five similarly situated TWA Flight Attendants seeking disability

---

1. Spadafora's concerns as to the adequacy of the IFFA's representation of her in various negotiations are not properly before the court and therefore will not be considered.

benefits.[2] The IFFA and TWA scheduled an arbitration hearing for March 15 and 16, 1994. The subject matter of the arbitration was identical to the subject matter of Spadafora's claim before this court. In the process of preparing for the arbitration, the parties entered into settlement discussions and reached an agreement dated March 11, 1994 (the Joint Agreement). The Joint Agreement stipulates to the intent of the parties with respect to various issues pertaining to the collective bargaining agreement then in effect, including:

1. Whether pursuant to Article 20(D)(2) TWA must pay Longshoremen's Act benefits of two-thirds of an employee's last year's salary in addition to the statutory workers compensation benefits; and

2. Whether pursuant to Article 20(D)(2) TWA must provide for Longshoremen's Act benefits in such a way as to indicate to the I.R.S. that these are tax free benefits; and

3. Whether pursuant to Article 20(D)(2) TWA must dedicate a fund, such as an annuity, to be set up for each member of the affected class to provide for payments of Longshoremen's Act benefits; and

4. Whether pursuant to Article 20(D)(2) cost of living increases from the date of injury must be payable to each member of the class; and

5. Whether pursuant to Article 20(D)(2) payment of Longshoremen's Act benefits must be made on a bi-weekly basis.

Joint Agreement at 3. The Joint Agreement applies to Spadafora's claim against TWA.[3]

Pursuant to the Joint Agreement, TWA will continue to pay benefits to the class members, including Spadafora, in accordance with Article 20(D)(2) at the higher Longshoremen's Rate. Further, the Joint Agree-

ment provides that TWA's practice of paying benefits equal to the New York Worker's Compensation Rate and then paying an additional amount to equal the benefits paid under the greater Longshoremen's Act complies with TWA's obligation. In effect, the total benefits that TWA is and has been paying under the collective bargaining agreements are equal to the amount of the Longshoremen's Act benefit. Further, no obligation has ever existed on the part of TWA to pay both benefits. Joint Agreement at 3.

Additionally, the Joint Agreement resolves other issues which have been raised before this court. The parties have agreed that Article 20(D)(2) was not intended to speak to the taxability of the benefits, nor was it the intent of the parties to the collective bargaining agreement that an annuity be set up by TWA to provide for the payment of those benefits. The parties have also agreed that benefits under Article 20(D)(2) shall be paid on a monthly basis. Further, the parties agree that cost of living adjustments shall be made for flight attendants with permanent total disabilities, as defined by the applicable state Workers Compensation law.

## IV. DISCUSSION

■ Spadafora has failed to raise a genuine issue of material fact, and therefore the only question remaining is whether TWA is entitled to judgment as a matter of law. TWA argues that Spadafora's claim should be disallowed based on Section 502 of the Bankruptcy Code, which provides for the allowance of claims or interests. Assuming, arguendo, that Spadafora's claim was prima facie valid, TWA would need to produce evidence rebutting an essential element of her claim. In re Allegheny Intern., Inc., 954 F.2d 167, 173 (3d Cir.1992).

2. The class members included Ann Spadafora, Sal Di Gioia, Elizabeth Robinson, Barbara Curran, and Pamela Kapaun. Spadafora, et al., IFFA Case No. 93–0013.

3. "The Settlement Agreement ... is intended to be applicable to all Flight Attendants similarly situated. Based on information and belief, the individuals similarly situated include:

| | |
|---|---|
| Ann Spadafora | PRN82369 |
| Sal Di Gioia | PRN22015 |
| Elizabeth Robinson | PRN75181 |
| Barbara Curran | PRN25792 |
| Pamela Kapaun | PRN49169" |

Docket no. 4011, ex. 2; letter from IFFA Secretary/Treasurer to TWA Labor Relations Manager dated 5/2/94.

Essential to Spadafora's claim is her contention that she has a right to payment of $902,400.00 by TWA. 11 U.S.C. § 101(5)(A). Any possible legal basis for her claim would be entirely grounded in her interpretation of the collective bargaining agreement. Spadafora contends that the collective bargaining agreement should be interpreted in such a manner as to provide her with the right to payment of *both* the Federal Longshoremen's benefit *and* the state Worker's Compensation benefit. Spadafora cites no legal authority to support this position, nor can she, since none exists. She merely claims that she has a right to payment of double benefits for forty years. To rebut Spadafora's contention, TWA has produced the Joint Agreement, which clearly delineates the intent of the parties with respect to the collective bargaining agreement then in effect. The intent of the parties to the collective bargaining agreement, which is binding upon Spadafora, must be considered when interpreting this contract. Further, as with any contract, the clear and unambiguous language of the contract must be given, at a minimum, great weight.

The Joint Agreement, as well as the collective bargaining agreements, clearly and unambiguously provide that Spadafora be paid disability benefits in an amount equal to the Longshoremen's Rate. Spadafora has failed to produce any evidence to the contrary which would tend to prove the validity of her claim. Further, no legal basis has been adduced which would support the existence of such a claim. Neither of the collective bargaining agreements are open to a reasonable interpretation that would allow for the payment of double benefits. Further, as the settlement agreement makes clear, it was never the intention of the parties that double benefits be paid. Spadafora is, has been, and will continue receiving benefits at an amount equal to the higher Longshoremen's Rate. Since TWA owes nothing to Spadafora that she is not already receiving pursuant to the agreements, there is no legal basis for Spadafora's claim. Her claim is therefore unenforceable against TWA and its property.

## V. CONCLUSION

For the above stated reasons, TWA's motion for summary judgment in its favor is hereby GRANTED, and Claim No. 6791 of Ann G. Spadafora is disallowed.

An order in accordance with this Memorandum Opinion is attached.

### ORDER

AND NOW, October 3, 1994, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. TWA's motion for summary judgment, pursuant to Fed.R.Bankr.P. 7056, with respect to Claim No. 6791 is GRANTED.

2. Claim No. 6791 of Ann G. Spadafora is hereby DISALLOWED.